IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNE MOROZ, et al | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-3188 |
| ALEXICO CORPORATION, et al | : | |

Diamond, J.                                                                                        January 7, 2008

### MEMORANDUM

Consumers seek to bring a class action against distributors and sellers of "Premium Care Theft Gard" – a product intended to deter car theft and aid in the recovery of stolen vehicles. 28 U.S.C. § 1332(d). Because the consumers have failed to state a claim upon which relief may be granted, I dismiss their Complaint.

**I.      STANDARDS**

All Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In deciding these motions, I must accept as true the factual allegations in the Complaint. See Erickson v. Pardus, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007); In re Rockefeller Ctr. Props, Inc., 311 F.3d 198, 215 (3d Cir. 2002). "The inquiry is not whether plaintiffs will ultimately prevail on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." Rockefeller Ctr., 311 F.3d at 215. Plaintiffs must allege facts sufficiently detailed to "raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65, 1974 (2007); see also Charles v. Lawyers Title Ins. Corp., 2007 WL 1959253 (D.N.J. July 3, 2007) (applying Twombly standard to Rule 12(c) motion); Hogue v. Palisades Collection, LLC, 2007 WL

1

1892938, at *2 (S.D. Iowa July 3, 2007) (<u>Twombly</u> standard applies to all cases, not just antitrust actions); <u>Osakwe v. Dept. of Homeland Sec.</u>, 2007 WL 1886249, at *3 n.2 (S.D. Tex. June 29, 2007) (same).   Finally, I may consider undisputedly authentic documents of public record – including letter decisions of government agencies – without converting a Rule 12 motion to dismiss into a motion for summary judgment.  <u>Global Naps, Inc. v. Bell-Atlantic, N.J., Inc.</u>, 287 F. Supp. 2d 532, 538 n.8 (D.N.J. 2003); <u>Pension Benefit Gaur. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1197 (3d Cir. 1993).

**II.     BACKGROUND**

Defendant Alexico is a Nevada-based corporation that distributes, sells, and administers PCTG.  The remaining Defendants – McCafferty Hyundai Sales and its affiliates – are Pennsylvania-based automobile dealerships that sell PCTG.  (Doc. No. 16 ¶¶ 1, 13-19.)  In 2003, Plaintiffs Joanne Moroz and John Reichelt each bought a new car from one of the Defendant dealerships; Moroz paid an additional $225 and Reichelt an additional $199 to have PCTG installed in their new cars.  (Doc. No. 16 ¶ 1; Ex. A, B, D.)

PCTG is little more than a vehicle identifier.  When they install PCTG, Defendants etch a unique number on a car's front window.  (Doc. No. 16 ¶ 1.)  Alexico maintains records of each customer's PCTG number.  (Id. at ¶ 25.)  PCTG  includes a "guarantee," that provides in pertinent part as follows:

> "Company" [Alexico] guarantees if the vehicle described in this registration is stolen within three (3) years of the date of purchase and installation of the "Vehicle Security System," [PCTG] and not recovered within thirty (30) days of the date the theft is reported to police, "Company" will pay "You" [purchaser] the lesser of a) $3,000.00 or b) the wholesale value of the vehicle as determined by the current NADA automobile guide . . .

(Doc. No. 18 Ex. D.)

When Plaintiffs purchased PCTG, they each signed a Registration Form explicitly providing that PCTG is "not an insurance policy," but rather a "guarantee based upon performance of the anti-theft system." (Doc. No. 16 Ex. C.) The form further provides that the guarantee is conditioned upon the purchaser carrying comprehensive theft insurance for his or her vehicle. (Id.)

## III. DISCUSSION

Plaintiffs originally brought their Complaint in the Philadelphia Common Pleas Court. Defendants removed to this Court, invoking jurisdiction pursuant to the Class Action Fairness Act. See 28 U.S.C. § 1332(d). Following removal, Plaintiffs amended their Complaint, which comprises eight counts, including state and federal causes of action and a claim for over $5,000,000 in damages.

Plaintiffs base their lawsuit on alternative allegations: under Pennsylvania law, PCTG is insurance and so must be regulated by the Pennsylvania Department of Insurance; or, if PCTG is not insurance, it is a warranty and so subject to regulation under state and federal law. I will address each allegation in turn.

### A. Claims Based On The Contention That PCTG Is Insurance

In the first five Counts of their Complaint, Plaintiffs charge that by marketing PCTG as a "guarantee" rather than insurance, some or all Defendants have committed the following wrongs:

> Count One – violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201 et seq.;

3

Count Two – conspiracy to commit consumer fraud;

Count Three – violation of the Pennsylvania Unfair Insurance Practices Act as the basis for common law deceit, 40 P.S. § 1171 et seq.;

Count Four – breach of a fiduciary duty; and

Count Five – violation of the Pennsylvania Motor Vehicle Sales Financing Act, 69 P.S. § 601 et seq.

Defendants have raised lengthy, significant challenges to the legal sufficiency of these claims. For instance, Defendants argue persuasively that the UIPA provides no private right of action. See Hardy v. Pennock Ins. Agency, 529 A.2d 471, 478 (Pa. Super. Ct. 1987). They also raise substantial doubts as to whether Plaintiffs have adequately pled a UTPCPL claim. See Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 202 (Pa. 2007).

Before addressing these questions, however, I must first examine Plaintiffs' underlying contention: that under Pennsylvania law, PCTG is "insurance." The Pennsylvania Insurance Department has twice determined that it is not. In 2002 and 2006, the Department's Office of Chief Counsel issued advisory letters on the subject of etch products like PCTG. (Doc. No. 18 Ex. 2, 3.) Once again, I may consider these letters – whose authenticity Plaintiffs do not dispute – without converting Defendants' Motions to Dismiss into motions for summary judgment. Global Naps, Inc., 287 F. Supp. 2d at 538 n.8 (D.N.J. 2003) (consideration of public record documents does not convert motion); Pension Benefit Gaur. Corp., 998 F.2d at 1197 (3d Cir. 1993). Moreover, I may defer to the administrative agency charged with regulating the activity at issue in this case. Yong Wong Park v. Attorney Gen. of U.S., 472 F.3d 66, 70 (3d Cir. 2006) (courts should defer to agency's interpretation of a statute it is charged with administering) (citing Chevron v. Natural Res. Def. Council, 467 U.S. 837 (1984)); Winslow-Quattlebaum v.

4

Maryland Ins. Group, 752 A.2d 878, 881 (Pa. 2000) (Insurance Department's statutory interpretation is afforded great weight). Indeed, the Insurance Department's opinion is especially significant here, given that Plaintiffs have premised most of their Complaint on the allegation that Defendants have impermissibly evaded the Department's regulation and review.

In its advisory letters, the Department correctly noted that insurance is not defined under Pennsylvania statutory law. (Doc. No. 18 Ex. 2, 3.) See also Korn v. Davis, 8 Pa. D. & C.3d 640 (Pa. Com. Pl. 1977). Rather, in determining whether a product is insurance, the Department looks to the following common law criteria:

> 1) Indemnification of the insured by the insurer.
> 2) Profit motive on the part of the insurer.
> 3) A future occurrence of a specific, fortuitous event over which the insured and the insurer have no control and the occurrence of which triggers payment. 4) An element of risk assumed by the insurer which is spread among the large group of insureds with similar risks at stake.
> 5) Present payment by the insured of a premium to the insurer which is allocated to a general fund, maintained by the insurer to which all premiums in the same risk group contribute and from which the reimbursement payments are made by the insurer.
> 6) The overall objective of the arrangement.

(Doc. No. 18 Ex. 2.)

The leading commentator employs similar criteria in defining insurance:

> 1) a contract to pay a sum of money upon the happening of a particular event or contingency;
> 2) indemnity for loss in respect of a specified subject by specified perils;
> 3) an undertaking by one party to protect another party from loss arising from named risks, for the consideration and upon terms and under the conditions recited;
> 4) a contractual security against anticipated loss where the risk of loss is occasioned by some future or contingent event and is shifted to or assumed by the insurer, with a distribution of the risk of loss by the payment of a premium or other assessment into a general fund;
> 5) a contract whereby one party promises for a consideration to indemnify

the other against certain risks.

Couch on Ins. § 1:6.  Other states with common law definitions of insurance also employ very similar criteria.  See Homeward Bound Serv., Inc. v. Ill. Dep't of Ins., 848 N.E.2d 589, 592 (Ill. 2006); Kinkaid v. John Morrel & Co., 321 F. Supp. 2d 1090, 1098 (N.D. Iowa 2004).

Applying these criteria, the Insurance Department has twice concluded that etch products like PCTG are not insurance and so are not subject to the Department's regulation. (Doc. No. 18 Ex. 2, 3.)  Of the six criteria set out in its advisory letters, the Department emphasized that the products did not meet the third, because there was no fortuitous event triggering payment under the etching product contract:

> [T]he arrangement only seeks to recompense a consumer because the VIN [vehicle identification number] etching has failed to perform as expected and the vehicle could not be recovered.  Therefore, incidents of non-recovery of a vehicle essentially indicate that there has been a manufacture or design defect with the VIN etching and no fortuitous event has occurred.  For these reasons, the VIN etching warranties described in your letter do not appear to constitute insurance products under the Commonwealth's insurance laws.

(Id.) I agree with the Department's analysis.  It is also apparent, however, that PCTG does not meet the sixth criterion that defines insurance: "the overall objective of the [PCTG] arrangement" confirms that PCTG is not insurance.  PCTG is intended to discourage theft, and, if a theft nevertheless occurs, to facilitate recovery of the vehicle.  As the Registration Form explicitly provides in requiring the purchaser to carry comprehensive theft insurance, Alexico seeks to guarantee the performance of the product, not to insure against car theft.  Accordingly, the "overall objective" of the arrangement is simply to warrant PCTG's performance.  See Pope v. TT of Lake Norman, LLC, 505 F. Supp. 2d 309 (W.D.N.C. 2007) (etching product is a

6

warranty, not insurance).

Plaintiffs emphasize that PCTG meets the Department's fourth criterion: the arrangement involves a shifting of risk and sharing of the cost of the risk. The Department did not find this determinative; nor do I. Virtually all warranties and guarantees involve a similar assumption and spreading of risk and cost. That does not eliminate the distinction between such warranties or guarantees and insurance. See G.A.F. Corp. v. County Sch. Bd. of Washington County, 629 F.2d 981 (4th Cir. 1980) (some risk shifting does not transform warranty into insurance); Couch on Ins. § 1:6. (guarantees involve some risk shifting).

In sum, I conclude that PCTG is not insurance. Because Plaintiffs premise Counts One through Five of their Complaint on the contention that PCTG is insurance, I am obligated to dismiss those Counts for failure to state a claim. In light of my decision, I need not address Defendants' other challenges to those Counts.

**B.     Claims Based On The Contention That PCTG Is A Warranty**

Plaintiffs base two Counts of their Complaint on the alternative allegation that PCTG is a warranty: Count Six – violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et seq.; and Count Seven – violation of the Motor Vehicle Sales Financing Act, 69 P.S. § 601 et seq..

I agree that PCTG is a warranty. The Magnuson-Moss Warranty Act defines a written warranty as:

> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of

>the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). See also Goodman v. Pearlstein, 1989 WL 83452, at *2 (E.D. Pa. July 21, 1989). Included in their sale of PCTG is Defendants' promise to take remedial action if the product fails to work. PCTG thus meets the definition of a warranty under federal law.

### 1. MMWA Claim

The MMWA sets forth warranty guidelines, procedures, and requirements. 15 U.S.C. § 2300 et seq. It provides a cause of action to those harmed by a warrantor's failure to comply with the law. 15 U.S.C. § 2310(d). Plaintiffs allege that Defendants violated the MMWA: by improperly "tying" the purchase of PCTG to the purchase of comprehensive theft insurance; and by failing to state explicitly whether the $3,000 guarantee was a full or limited warranty. 15 U.S.C. § 2300 et seq.

#### A. Anti-tying Provision

The MMWA prohibits conditioning a warranty "on the consumer's using, in connection with such product, any article or service . . . **which is identified by brand, trade, or corporate name**." 15 U.S.C. § 2302(c) (emphasis added). Plaintiffs do not allege that PCTG purchasers are required to purchase insurance identified by any "brand, trade, or corporate name." The PCTG Registration Form requires only that each registrant purchase automobile theft insurance, not insurance provided by a particular company. In these circumstances, Plaintiffs have failed to state a claim for a violation of the MMWA's anti-tying provision.

#### B. Identification As A Full or Limited Warranty

MMWA § 2302(a) requires that any written warranty should "fully and conspicuously

disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a). It further requires that the elements of the warranty be set forth in "words or phrases that would not mislead a reasonable, average consumer as to the nature or scope of the warranty." § 2302(a)(13). Plaintiffs contend that Defendants have violated this provision because they failed to state explicitly in the Registration Form whether PCTG provides a "full" or "limited" warranty.

Significantly, the PCTG warranty is written in "simple and readily understood language," and provides benefits that are equally simple and easy to understand: if, within three years of the purchase of PCTG, an etched vehicle is stolen and not recovered within thirty days, Alexico will provide the purchaser with the lesser of $3,000 or the value of the stolen vehicle. I do not see how this simple, clear warranty could be said to violate § 2302(a)'s disclosure requirements. Compare Wilbur v. Toyota Motor Sales, U.S.A., Inc., 86 F.3d 23, 26 (2nd Cir.1996) (language making commencement date of warranty ambiguous violates MMWA clarity requirement).

Defendants raise a more basic question, however: whether the failure to meet § 2302's disclosure requirements gives rise to an independent cause of action. MMWA § 2310(d) provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation of this chapter . . . may bring suit for damages and other legal or equitable relief." Id. Courts have interpreted this provision as allowing a claim under the MMWA only to redress a breach of warranty that causes the Plaintiff to sustain actual damages. See Temple v. Fleetwood Ent., Inc., 133 Fed. Appx. 254 (6th Cir. 2005) ("Ultimately, the applicability of the Magnuson-Moss Act is directly dependent upon a

sustainable claim for breach of warranty."). Accordingly, courts have rejected attempts to base a MMWA claim solely on the defendant's failure to comply with § 2302's disclosure requirements. See Atchole v. Silver Spring Imports, Inc., 379 F. Supp. 2d 797 (D. Md. 2005); Gates v. Chrysler Corp, 397 So. 2d 1187, 1188 (Fla. App. 1981). These holdings are consistent with the MMWA's legislative history. The Senate Conference Report on the MMWA stated that the law was intended to establish "meaningful consumer remedies for breach of warranty of service contract obligations." S. Conf. Rep. 1408, 93rd Cong. (1974).

Plaintiffs have not alleged that the etch protection they purchased failed to function as promised or that Defendants breached the PCTG warranty – whether full or limited. In the absence of any allegation of breach, it is difficult to see how Defendants' actions caused Plaintiffs to sustain actual damages. Plaintiffs nonetheless contend that the failure to specify whether PCTG was a "full" or "limited" warranty enabled Defendants to charge too much for PCTG, and that Plaintiffs may seek to recover some portion of that excess charge. It is by no means apparent how this "failure" caused the "harm" alleged. Once again, the PCTG contract is written in "words or phrases that would not mislead a reasonable, average consumer as to the nature or scope of the warranty." § 2302(a)(13). The addition of the words "full" or "limited" warranty would not enhance the purchaser's ability to determine whether the price Defendants charged for PCTG was too high. This is undoubtedly why Plaintiffs offer no reported decisions allowing suits to proceed under the MMWA for failure to comply with the law's dislcoure requirements. On the contrary, those courts that have addressed the question have held that in the absence of a breach, the failure to describe a warranty adequately does not cause "damages" within the meaning of the MMWA. See Atchole, 379 F. Supp. 2d at 802 (allegations that

consumers could not determine whether product was worth its price were insufficient to show necessary damages under § 2302); Gates, 397 So. 2d at 1188 (the failure to include required terms in the warranty was a "technical" violation and did not contribute to plaintiff's damages).

Significantly, MMWA § 2310 – the provision by which Plaintiffs seek to proceed – requires a consumer to give the warrantor an opportunity to cure any violation before the consumer may commence suit.  See Heller v. Shaw Industries, Inc., 1997 WL 535163, at *18 (E.D. Pa. Aug. 18, 1997) ("[A] plaintiff may not maintain a Magnusson-Moss Act claim unless plaintiffs have given defendant an opportunity to cure the alleged breach of warranty.  15 U.S.C. § 2310(e)."). This requirement supports Defendants' contention that Plaintiffs may not proceed under § 2310(d) in the absence of an allegation that Defendants breached the PCTG warranty.  The opportunity to cure normally includes allowing the warrantor to repair or replace the warranted product.  See e.g. Atchole, 379 F. Supp. 2d at 802; Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 2007 WL 1933121, *2 (D. Hi. June 8, 2007).  In the instant case, however, where the warranty was never breached or even implicated, there is no way for the warrantor to "cure" any violation.  Moreover, requiring that a warrantor be allowed to cure a breach necessarily means that the type of damages recoverable under § 2310(d) are those resulting from an uncured breach – damages that simply do not exist in the instant case.

In sum, it is apparent that Plaintiffs have failed to state a claim under the MMWA. Accordingly, Count Six is dismissed.

### 2. MVSFA Claim

Plaintiffs also allege that Defendants "marked up" by over 100 percent the price they charged for PCTG.  Plaintiffs seek to proceed under the MVSFA provision barring mark-ups

greater than 100 percent as "unfair, deceptive, fraudulent, or illegal practices." 69 P.S. § 610(A)(14).  The statute gives the Pennsylvania Department of Banking sole authority to revoke or suspend the license of any warrantor that charges excessive mark-ups.  69 P.S. § 610(A) ("The department . . . may revoke or suspend any license if it finds that . . . . the licensee has engaged in unfair, deceptive, fraudulent, or illegal practices . . . including making excessive markups . . .")  Plaintiffs implicitly concede that § 610(A) provides no private right of action.  (Doc. No. 22 at 34.)  Plaintiffs nonetheless assert that because a violation of the MVSFA constitutes a *per se* violation of the UTPCPL, they may pursue a private right of action under the UTPCPL for a violation of § 610(A).

Pennsylvania law provides that violations of certain consumer protection statutes constitute *per se* UTPCPL violations.  For instance, Pennsylvania's automobile "lemon law" explicitly provides that a lemon law violation is also a *per se* UTPCPL violation.  73 P.S. § 1961.  Both Pennsylvania's Real Estate Licensing Act and Health Club Act also include provisions explicitly making the violation of either law a *per se* UTPCPL violation.  63 P.S. § 455.609; 73 P.S. § 2175.

The Legislature's failure to include such a provision in the MVSFA – especially when it included the provision in other statutes – suggests strongly that the Legislature did not intend an MVSFA violation to be a *per se* UTPCPL violation.  See Seliga v. State Employees Ret. Sys., 682 A.2d 77, 79 (Pa. Commw. Ct. 1996) (Legislature is presumed to adopt statutes with full knowledge of existing similar statutes); Abrams v. Toyota Motor Credit Corp., 2001 WL 1807357, at *8 (Pa. Ct. Com. Pl. Dec. 5, 2001) (no *per se* violation of the UTPCPL where it is not expressly provided for in the underlying statute).  Rather, §610's exclusive enforcement

mechanism – the Banking Department's revocation or suspension of licenses – confirms that the Legislature sought to penalize excessive mark-ups through regulatory action alone. See e.g., Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 603 (Pa. Super. Ct. 1988) (violation of the UIPA must be enforced by Department of Insurance rather than through the UTPCPL); Moy v. Schreiber Deed Security Co., 572 A.2d 758, 760-61 (Pa. Super. Ct. 1990) (same for violation of the Title Insurance Act). Moreover, construing the MVSFA to include a provision making § 610's violation a *per se* violation of the UTPCPL would contravene the Third Circuit's admonition against reading into Pennsylvania statutes provisions the Legislature did not put there. See Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1374 (3d Cir. 1996) (citing Key Savings and Loan Ass'n v. Louis John, Inc., 549 A.2d 988, 991 (Pa. Super. Ct. 1988)) ("[T]he courts may not insert language into a statutory provision where the legislature has failed to supply it.").

In sum, I am compelled to conclude that an excessive mark-up as defined by § 610 is not a *per se* violation of the UTPCPL. Because there is no private right of action under § 610(A), I will dismiss Count Seven.

### C. Unjust Enrichment

Finally, in Count Eight of their Complaint, Plaintiffs allege that Defendants were unjustly enriched from their wrongful sales of PCTG, as described in Counts One through Seven. Having dismissed Counts One through Seven, I have necessarily found that Defendants have not acted wrongfully, and so as a matter of law have not been unjustly enriched. See Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. Ct. 1985). Accordingly, I dismiss Count Eight.

## IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' Motions.  An appropriate Order follows.

BY THE COURT.

*/s Paul S. Diamond*
_____
Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNE MOROZ, et al | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-3188 |
| ALEXICO CORPORATION, et al | : | |

## ORDER

AND NOW, this 7th day of January, 2008, upon consideration of Defendants' Motions to Dismiss (Doc. No. 17, 18), Plaintiffs' Responses (Doc. No. 21, 22), Defendants' Replies (Doc. No. 27, 28), and all related submissions, it is ORDERED that Defendants' Motions to Dismiss are **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED with prejudice**.

The Clerk shall close this case for statistical purposes.

IT IS SO ORDERED.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.